UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:09-cr-00039-FDW

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| MICHAEL GREENE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

THIS MATTER is before the Court on several motions filed by Defendant: Pro Se Motion

for Compassionate Release, (Doc. No. 904) and Second Pro Se Motion for Compassionated

Release, (Doc. No. 905). The Government responded in opposition to the motions for

compassionate release, (Doc. No. 924), and Defendant has filed supplemental briefing and letters

related to the original motions, (Doc. Nos. 914, 927, 928, 932, 943, 944,[1] 955, 957, 965, 968). For

the reasons that follow, Defendant's Motions are DENIED.

**I.      Background**

Following a jury trial and other proceedings, [2] Defendant Michael Greene was sentenced

to a term of imprisonment of 720 months (60 years), within the Guidelines range of 360 months

---

[1] Although Defendant submitted most pleadings pro se, this "Supplemental Memorandum In Support of Motion" was filed by counsel indicating his appearing on behalf of Defendant. This pleading reiterates Defendant's arguments made in his pro se motions and supplements those arguments with additional legal authorities and evidence related to the COVID-19 pandemic to support the requested relief. Since that filing, counsel has not filed any additional pleadings on behalf of Defendant.

[2] Defendant appealed following his trial, and the Fourth Circuit affirmed Defendant's convictions and explained:

> We conclude that there was substantial evidence to support both convictions. The evidence in support of the convictions came from law enforcement and several of Greene's co-conspirators. In addition, there was evidence of wiretaps, weapons seizures, DNA and drug analysis that offered clear support for the guilty verdicts. There was more than sufficient evidence showing that Greene voluntarily agreed to engage in a conspiracy to distribute drugs and to commit a robbery.

1

to life, for conspiracy to distribute and possess with intent to distribute one or more controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 846, and 851 and conspiracy to commit robbery affecting interstate commerce in violation of 18 U.S.C. § 1951. (Doc. No. 734). Based on the evidence, Defendant was responsible for approximately 2,056 grams of powder cocaine and 1.7 kilograms of cocaine base. (Doc. No. 516, p. 14). His federal offense followed more than fifteen state convictions, including drug offenses and multiple assaults.

The record at trial indicates Defendant began participating in the conspiracies that led to his federal criminal convictions in the late 2000s. (Doc. No. 516, p. 10). He is an affiliate of the United Blood Nation street gang, and he conspired to commit an armed robbery and to traffic in drugs with other affiliates of that gang. Id.

Defendant planned and prepared for an armed robbery with other gang affiliates in January of 2009. (Doc. No. 429, p 10). Defendant and his cohorts targeted an individual to rob whom they thought possessed money and drugs.[3] Id. They discussed their methodology, and Defendant conducted surveillance of the location on multiple occasions. Id. at 10–11. Defendant offered a jeep for use in the robbery and stated that he would bring a gun. Id. at 10–11. Defendant knew

---

United States v. Greene, 513 F. App'x 300, 302 (4th Cir. 2013) (remanding for resentencing in light of new law issued after Defendant was originally sentenced that reduced the statutory maximum sentence under an amended version of 21 U.S.C.A. § 841(b)(1)(A)). Notably, the Fourth Circuit also ruled, "[W]e find no error in the Guidelines' calculations and the court's findings regarding Greene's total offense level and criminal history category. Greene, 513 F. App'x 300 at 302.

[3] For example, a co-conspirator Campbell also testified that he, Defendant, and other co-conspirators planned to rob another drug dealer, that Defendant had driven by the house more than five times casing it, and that Defendant knew that the dealer, his girlfriend, and some children lived there. (Doc. No. 591, pp. 81-82, 86-95). According to Campbell, the dealer was selling kilograms of cocaine and had another business, so they intended to steal drugs and money from his home by arming themselves with firearms and kicking in the door. (Id. at 97-98, 111-12, 123-24, 134). Campbell testified that Defendant was trying to get his girlfriend to rent a car so they could use it for the robbery and that Defendant discussed getting some teenage boys (aged 15 to 17) to go into the house with guns to commit the robbery, while Defendant and Campbell waited around the corner. (Id. at 124-27, 136-39).

children lived in the location, and he suggested recruiting teenagers and providing them with firearms in order to commit the robbery.

Police officers were conducting surveillance of Defendant and his cohorts while they planned the robbery. Id. at 10–12. Officers interceded when they learned Defendant was going to meet another cohort at a children's skating rink to deliver a gun. Id. at 12. Defendant led police on a high-speed chase, driving dangerously "on the wrong side of the road" and throwing the gun out of the car. Id. at 12. Police also seized a 9mm handgun that Defendant had stored at the residence of a family member of a cohort. Id. at 12, 32.

Defendant also sold substantial quantities of crack cocaine and other drugs as part of a conspiracy with his cohorts. Id. at 10, 12. Defendant "regularly engaged in crack and powder cocaine transactions, often buying dealer-quantities of crack" from his cohorts. Greene v. United States, No. 3:09-CR-39-FDW-5, 2017 WL 130004, at *2 (W.D.N.C. Jan. 12, 2017). The evidence at trial showed that, beginning at least as early as 2004, Defendant regularly engaged in crack and powder cocaine transactions, often buying dealer-quantities of crack from co-defendants Campbell and Nash. Campbell testified that he regularly brought three to four kilograms of powder cocaine from Atlanta to Charlotte. (Doc. No. 591 at 42-45: Trial Tr. III aft.). Clement Hope also testified that he bought powder cocaine from Defendant. (Id., Doc. No. 585 at 418: Trial Tr. III). Hope testified he observed Defendant purchase and sell crack cocaine. (Id. at 426-27, 433). Hope testified to Defendant's involvement in robbing other drug dealers, including a robbery in which a kilogram of cocaine was stolen. (Id. at 422, 427-31, 434-35).

After Defendant was arrested, he attempted to threaten and intimidate witnesses. Id. at 14–15, 31–32. He obtained discovery from his attorney and stated that he planned to direct his

3

girlfriend to place reports of interviews of cooperating witnesses on the window of a "store in 'the hood.'" Id. at 14–15, 31–32. He expressed hope that someone would "kill them." Id. at 32. The United States prevented Defendant from acting on his plan by intercepting his communications and retrieving the reports when executing a search warrant. Id. at 31–32.

On February 8, 2010, the date the trial was scheduled to begin, Defendant refused to meet with his attorney Victoria Jayne, refused to dress out of his jail clothes, and disrupted the courtroom to the point that he was removed. In light of the disruptions, jury selection was postponed until the following day. In reviewing the representation issue when proceedings resumed on February 9, this Court stated that defense counsel had "very thoroughly reviewed the evidentiary record in the U.S. Attorney's open file. She's filed a series of motions with regard to all that evidence," and she "has worked very, very vigorously on your behalf." (Doc. No. 584 at 107: Trial Tr. II). Defendant acknowledged, "I'm not saying she is ineffective." (Id. at 109). Defendant then stated his intention to proceed pro se, and the Court directed Jayne to proceed as standby counsel. (Id. at 111). Defendant represented himself throughout voir dire and the Government's case. However, during cross-examination of the last government witness, he removed himself from the courtroom, and Jayne stepped in to represent him. (Id., Doc. No. 586 at 259-60: Trial Tr. IV).

The Court initially sentenced Defendant to life imprisonment, (Doc. No. 561), and following remand from the Fourth Circuit in light of intervening case law from the Supreme Court,[4] the Court imposed a sentence of 60 years, including a maximum sentence of 40 years for

---

[4] After this Court sentenced Defendant and while his appeal was pending, the Supreme Court issued Dorsey, which held that the more lenient penalties of the Fair Sentencing Act ("FSA") applied to pre-FSA offenders who were sentenced after the Act's effective date. Dorsey v. United States, 567 U.S.26, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012). The Fourth Circuit explained:

his conviction of conspiracy to distribute drugs and 20 years for his conviction of conspiracy to commit robbery. (Doc. No. 734). Pursuant to USSG Chapter 5, Part A, based on a total offense level of 40 and a criminal history category of V, the guideline range for imprisonment is 360 months to life, so the sentence imposed was within the guidelines range. When the Court resentenced Defendant, the Court did not include the § 851 enhancements from Defendant's two prior state court convictions that were included in the original sentence because those convictions no longer met the definition of "felony drug offense" based on United States v. Simmons, 649 F.3d 237 (4th Cir. 2001). (Doc. No. 726).

## II.     Analysis

Defendant brings this motion under 18 U.S.C. § 3582(c)(1)(A). Informally known as the "compassionate release" statute, this provision is understood to "introduce compassion as a factor in assessing ongoing terms of imprisonment" by "authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments." United States v. Hargrove, 30 F.4th 189, 197 (4th Cir. 2022). Defendant has served approximately 14 years of his 60 year sentence and seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) because of elevated risk for COVID-19 given his health conditions (including the combined risks caused by his age of over 40 years, his hypertension, the heightened risk of serious illness or death caused by COVID-19, and conditions of his confinement and COVID-19 protocols

---

Because Greene was sentenced after the Act's effective date for conduct that occurred prior to enactment, the Act applies to him. Greene was found guilty of conspiracy to distribute at least 50 grams of crack cocaine and 500 grams of cocaine. Under the amended version of 21 U.S.C.A. § 841(b)(1)(A), Greene's statutory maximum sentence is forty years' imprisonment. Greene, 513 F. App'x at 302.

and procedures at U.S.P Canaan) and because of the impact of § 851 notice filed by the Government for what Defendant characterizes as "two fraudulent state court convictions." (Doc. No. 905, p. 5).

Generally, the district court "may not modify a term of imprisonment once it has been imposed," 18 U.S.C. § 3582(c). Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). If the defendant has administratively exhausted a claim for release,[5] this Court analyzes the motion in two steps: (1) whether extraordinary and compelling reasons warrant such a reduction; and (2) the relevant 18 U.S.C. § 3553(a) factors, to the extent they are applicable, favor release. 18 U.S.C. § 3582. When analyzing "extraordinary and compelling reasons," "[t]he district court enjoy[s] broad discretion." United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021). The Fourth Circuit has determined that district courts may take an individualized approach regarding whether "extraordinary and compelling reasons" are established. United States v. McCoy, 981 F.3d 271, 286 (4th Cir. 2020). Therefore, "district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)).

A.    **Extraordinary and Compelling Reasons**

---

[5] Here, it is uncontested that Defendant exhausted his administrative remedies with the Bureau of Prisons.

Turning to the merits of his motions, Defendant contends "extraordinary and compelling reasons" to reduce his sentence include: 1) his elevated risk for COVID-19, and 2) the "contamination" of the sentencing record caused by the Section 851 notice filed in his case and later deemed to be inapplicable tainted his case and sentence imposed by this Court. The Court addresses these in turn.

Defendant contends he faces a risk of contracting COVID-19 while incarcerated at USP Canaan and faces a heightened risk of a severe case of COVID-19 or possibly death if he were to contract the virus due to his hypertension. Notably, Defendant fails to provide his BOP medical records to substantiate his claims of hypertension. The Government provided medical records, which indicate Defendant's prior and current health problems, none of which is hypertension. (Doc. No. 925). Moreover, Defendant does not assert in his motions that his medical conditions are uncontrolled or that they substantially diminish his ability to provide self-care while incarcerated. Without any evidence to demonstrate Defendant has hypertension, he fails to demonstrate that he faces increased vulnerability to COVID-19, he has a particularized susceptibility to COVID-19, or that he has a particularized risk of contracting COVID-19 at his specific facility.[6] In other words, Defendant fails to show extraordinary and compelling reasons for release because of the COVID-19 pandemic.

Next, Defendant asserts the Government's § 851 notice—which relied on now disqualified state court convictions—tainted his case from the beginning notwithstanding the fact Court did not

---

[6] Notably, the supplemental briefing submitted by counsel provided argument and case law related to the increased risk for those with hypertension of contracting COVID-19. This brief, however, failed to provide any medical records or other evidence to support Defendant's claim of hypertension even though it was filed after the Government had provided its response noting the lack of medical documentation to support Defendant's asserted medical condition. (Doc. No. 944).

apply any enhanced penalty for § 851 when it imposed his current sentence. Specifically, Defendant contends the Government's "misconduct" of using two § 851 notice based on "two fraudulent state court Judgment and Commitment documents" improperly elevated the original mandatory sentence in his case to life imprisonment, which he contends "contaminated the proceedings," erroneously enhanced the sentence he "would have been in a position to receive [of] 12 to 15 years," "prevented him from testifying on his own behalf" and "caused defendant to unwisely disrespect the Court that he viewed to be complicit with said misconduct." (Doc. No. 905, pp. 5-6; Doc. No. 927, pp. 1, 2).

The record here regarding the two prior state court convictions that formed the basis for the § 851 notice fails to demonstrate extraordinary and compelling reasons to reduce Defendant's sentence. First, the Court explicitly stated at Defendant's resentencing here that "the Supplemental Presentence Report factors in <u>Simmons</u>, reduces the 851 notice because of Simmons, so there is no enhanced penalty anymore after <u>Simmons</u>." (Doc. No. 728, p. 53; Transcript of Resentencing Hearing). Accordingly, the Court did not enhance Defendant's current sentence based on the notice. Second, Defendant's claim that the § 851 notice should excuse the decisions he made throughout the pretrial and trial proceedings in this case fails to constitute extraordinary and compelling reasons to reduce his sentence, particularly under the full record of this case.

Third, Defendant has not shown the original filing of the 851 notice by the Government that relied on the two prior state court convictions constituted "criminal conduct of obstructing justice" or was otherwise improper. (Doc. No. 927, p. 2). When Defendant originally appealed the prior state court convictions, the North Carolina Court of Appeals remanded the case for resentencing. (Doc. No. 944, pp. 8-10). The final order in Defendant's state court case concluded

8

Defendant was resentenced appropriately under applicable state law. (Doc. No. 944, pp. 19-21). While it appears, there were multiple orders considering and reconsidering Defendant's sentences for the state court convictions, including order on post-sentencing motions for appropriate relief filed by Defendant, nothing in the record before the Court indicates a "fraudulent N.C. State Court Judgment and Commitment," "fraudulent, borderline criminal conduct," or "scandalous, criminal conduct of obstructing justice." (Doc. No. 927, pp. 1-2). Instead, the state court orders reflect that the court conducted "research," reviewed "the audio tapes" from Defendant's resentencing to resolve "uncertain[ties]," and ultimately concluded "after much research [that] defendant was present" at the resentencing that occurred in December 2005 but did not get reduced to judgment until November 2009. (Doc. No. 944, pp. 19-20). The state court also resolved the "confusion" due to the lack of a "Judgment and Commitment from the December 2, 2005 resentencing" and noted that the trial judge ultimately "signed the corrected judgment on November 8, 2009 on behalf of" the resentencing judge. (Id. at 20). In the corrected judgment that was signed in November 2009, the trial judge signing the document imposed the same duration and same time of pretrial confinement credited to Defendant by the resentencing judge. (Id.). Ultimately, the state court concluded it "resentenced the defendant correctly" under applicable law with Defendant and his counsel present. (Id. at 21).

Finally, Defendant also asserts that he has been rehabilitated and is no longer a safety risk to the community. He explains that he has been participating in different programs offered to inmates and mentoring them. "It is well settled that compassionate release cannot be based on rehabilitation alone, and a defendant's claim of an exemplary prison record and being successfully

9

rehabilitated does not present an extraordinary circumstance." United States v. Hallman, No. 3:12-CR-97-MOC, 2022 WL 4477710, at *3 (W.D.N.C. Sept. 26, 2022) (citation omitted).

For these reasons, the Court concludes that the grounds cited by Defendant, either singly or in combination, do not constitute extraordinary and compelling reasons for compassionate release.

**B.     Consideration of Applicable § 3553(a) Factors**

Even if Defendant's asserted grounds establish an extraordinary and compelling reason, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020). Here, consideration of the applicable § 3553(a) factors counsel against any reduction in Defendant's sentence. U.S. v. High, 997 F.3d 181, 186 (4th Cir. 2021) ("[I]f a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction. Rather, it must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment. 18 U.S.C. § 3582(c)(1)(A)."). "'[A] particular fact need not be mentioned specifically in Section 3553(a) to be considered in the district court's sentencing calculus; many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" United States v. Bond, 56 F.4th 381, 384 (4th Cir. 2023) (quoting United States v. Jackson, 952 F.3d 492, 500 (4th Cir. 2020)). "District courts must consider the following relevant § 3553(a) factors as they pertain to the defendant: the nature and circumstances of the offense; the history and characteristics of the defendant; the need to avoid unwarranted sentence disparities; and the need for the sentence imposed to provide just

10

punishment, afford adequate deterrence, protect the public, and provide the defendant with training, medical care, or other correctional treatment in the most effective manner." United States v. Malone, 57 F.4th 167, 176 (4th Cir. 2023) (cleaned up).

In reconsidering all the § 3553(a) sentencing factors applicable here and applying them to the unique facts of this case, the Court highlights a few, including the nature and circumstances of the offense and the history and characteristics of Defendant, as well as the need for the sentence to provide just punishment, afford adequate deterrence, and protect the public.

Defendant's crimes of conviction and criminal history demonstrate that he remains a danger to the safety of any other person and to the community. As this Court explained in detail during the sentencing hearing, Defendant's conduct was extremely dangerous and violent. (Doc. No. 588, pp. 195 –204). The nature and circumstances of the offense here reflect multiple occasions where children were put at risk in furtherance of the conspiracy. He "used robbery and intimidation as part of his drug trafficking." Id. at 197. He assaulted one victim and intimidated another by exploiting her "concern[] about her child." Id. at 198–99. And he "attempted to intimidate virtually every person that had some involvement in the proceeding." Id. at 195. This Court found that Defendant "intimidates and threatens individuals; obstructs justice;" and "uses violence." Id. at 201. He "seriously wanted to commit a violent act against those who were cooperating against him." Id. at 202.[7] This Court specifically found that "if he is on the street,"

---

[7] For example, the record reflects, "In a letter written by Greene to codefendant Jawaad Nash, the defendant disclosed to Nash that he had the case discovery in his possession and he provided details regarding the information contained in discovery, including statements made by coconspirators implicating Greene, Nash and others. In the letter, Greene stated, "I got the statements I'm sending them home to Shimana she gonna show everybody and put em on the window at the store in the hood.' He characterized cooperating codefendants . . . as liars and wrote, 'I hope somebody kill them lying ass dumass boys.'" (Doc. No. 516, p. 14).

11

Defendant is a "dangerous individual" who "would probably track down people that cooperated against him and kill them." Id. at 202.

Additionally, Defendant has a lengthy criminal history beginning when he was sixteen years old and continuing until arrested for the instant offenses, which Defendant committed while he was on probation for an offense in North Carolina and another offense in Florida. Defendant's history of violence and other crimes have demonstrated that he is a danger to society whenever he has been out of prison.

Defendant's offense conduct is egregious, extremely serious, and extremely violent. His history and characteristics continue to include conduct that demonstrated a lack of respect for the law, little or no respect for the lives of others, and disrespect to this Court. And a reduction in Defendant's sentence would reduce the capacity to reflect the seriousness of the offenses here, promote respect for the law, and provide just punishment for the offenses in this case. Early release, which is unavailable to the vast majority of prisoners, see McCoy, 981 F.3d at 287, would fail to "need to protect the public from further crimes of this defendant." (Doc. No. 588, p. 201). As this Court described in detail at sentencing, Defendant has an extraordinary history of violence, and he attempted to intimidate numerous people in connection with his criminal proceeding. His early release would pose a great risk to the public and an intolerable risk to the witnesses that he threatened. Additionally, release today would require reducing Defendant's sentence by nearly four decades. He has served "only a fraction" of the prison sentence this Court found was necessary to fulfill the statutory purposes of sentencing. See United States v. Sanders, No. 3:17-CR-31-MOC-DCK-1, 2020 WL 7033963, at *3 (W.D.N.C. Nov. 30, 2020).

12

Allowing him to serve the vast majority of his prison sentence outside of prison would greatly undermine those purposes. This Court has authority to impose an extended term of supervised release when it grants compassionate release, 18 U.S.C. § 3582(c)(1)(A), but supervised release would not suffice to further the statutory goals in lieu of the remainder of Defendant prison term. Greene violated the terms of his state probation multiple times. He attempted to obstruct justice and intimidate witnesses while his proceeding was ongoing. And he engaged in prison misconduct even before his final sentencing hearing was complete by assaulting another inmate in 2012. (Doc. No. 925, p. 16).

As for rehabilitative efforts during his time of incarceration, Defendant has demonstrated some progress in his rehabilitation, but his disciplinary record continues to demonstrate a lack of respect for the law. He indicates the Bureau of Prison has placed him at a "LOW recidivism rate," although he does not provide the Court with any evidence to support this assertion. (Doc. No. 965, p. 1). Defendant also indicates he has taught over thirty inmates to read, studied business, taught business law and concepts to other inmates "with the hopes that they will go home and utilize their business knowledge to not only stay crime free, but to also enhance their families lives and serve their respective communities." (Doc. No. 965, p. 2). Defendant also notes he has learned how to obtain grants and sponsorships, which he hopes to use to fund a non-profit organization and target at-risk youth. Id. Defendant also indicates he has spent significant time studying history and serves as a resource for BOP staff members regarding things he has learned, all of which "helped me build character and purpose." Id. at 4. Defendant's asserted rehabilitation—though commendable—is insufficient to warrant a sentence reduction given the other § 3553(a) factors. See Pepper v. United States, 562 U.S. 476, 491 (2011) ("[E]vidence of postsentencing

13

rehabilitation may be highly relevant to several of the § 3553(a) factors."). This is particularly true where the current record indicates several recent disciplinary incidents: 1) misuse of the phone in 2019; 2) destruction of property in 2019; 2) refusing to obey an order in 2019; 4) refusing to obey orders in 2018; 5) another incident of refusing to obey an order in 2018; and 6) an incident of being insolent to staff members in 2018. (Doc. No. 925, p. 15). This continues to demonstrate his lack of respect for the law.

In sum, even if Defendant had represented an "extraordinary and compelling reason" to reduce his term of imprisonment, the Court's consideration of the applicable § 3553(a) factors counsel against such modification in this case. Defendant participated in violent robberies in furtherance of a drug trafficking conspiracy. Based on the nature of the Defendant's crimes and his criminal history, the Court finds that the Defendant's current sentence (of which Defendant has served approximately one-quarter) reflects the seriousness of the offense, promotes respect for the law, and affords adequate deterrence to further criminal conduct.

### III.     Conclusion

In reviewing Defendant's motions and supplemental related filings, it is this Court's "task . . . not to assess the correctness of the original sentence it imposed . . . [but] to determine whether the § 3553(a) factors counsel[] against a sentence reduction in light of the new, extraordinary circumstances identified." United States v. Bond, 56 F.4th 381, 385 (4th Cir. 2023 (quoting Kibble, 992 F.3d at 334 (Gregory, C.J., concurring). Here, Defendant has failed to identify extraordinary and compelling circumstances to make him eligible for a reduction; and even presuming his asserted grounds were extraordinary and compelling, consideration of applicable § 3553(a) factors counsel against a sentence reduction.

14

IT IS THEREFORE ORDERED that Defendant's Motion for Compassionate Release (Doc. Nos. 904, 905) are DENIED.

IT IS SO ORDERED.

Signed: March 21, 2023

Frank D. Whitney
United States District Judge

15